<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 UNITED STATES COURT OF APPEALS
                     FOR THE FIRST CIRCUIT
                      ____________________

No. 96-2255

                     DR. ISRAEL GANAPOLSKY,

                     Plaintiff, Appellant,

                               v.

         BOSTON MUTUAL LIFE INSURANCE COMPANY, ET AL.,

                     Defendants, Appellees.

                      ____________________

          APPEAL FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

         [Hon. Jos Antonio Fust, U.S. District Judge]

                      ____________________

                             Before

                    Torruella, Chief Judge,

                   Cyr, Senior Circuit Judge,

                     Lynch, Circuit Judge.

                     _____________________

   Kevin G. Little, with whom David Efrn and Law Offices David
Efrn, were on brief for appellant.
   Guillermo de Guzmn-Vendrell, with whom Victoria D. Pierce and
Cancio, Nadal, Rivera & Daz, were on brief for appellees.

                      ____________________

                        March 17, 1998
                     ____________________

         TORRUELLA, Chief Judge.  Israel Ganapolsky ("Ganapolsky"), a
medical doctor from Puerto Rico, filed this action against his
insurer, Boston Mutual Life Insurance Company ("Boston Mutual"),
to recover under an accidental death and dismemberment policy for
the partial amputation of his left foot.  Boston Mutual had
denied Ganapolsky's claim for the loss.  On a stipulated record,
the district court entered judgment in favor of Boston Mutual,
and Ganapolsky appeals.  We affirm.
         The following facts are essentially undisputed.  On June 5, 1992,
while in New York City, Ganapolsky accidentally injured his left
foot when he tripped on a two-inch step at the entrance to the
men's room of a theater.  The next day, Ganapolsky continued with
his planned trips to Turkey and Israel, but was forced to cut his
travel short and return to Puerto Rico after approximately two
weeks due to increasing problems with his foot.  At the hospital
in Puerto Rico where he was admitted, Ganapolsky was diagnosed
with gangrene in his left foot and a below-the-knee amputation
was recommended.  In addition, for the first time, it was
discovered that Ganapolsky had diabetes.  Ganapolsky travelled to
Union Memorial Hospital in Baltimore, Maryland to seek treatment
for his foot.  There, his doctor performed a "Chopart"
amputation, which, as the district court aptly observed, "can
best be visualized as a cut going from the point on top of the
foot approximately where a man's shoelace is knotted down to the
bottom of the foot, leaving the heel."  Ganapolsky v. Boston Mut.
Life Ins. Co., Civ. No. 94-2229, slip op. at 2 (D.P.R. July 3,
1996).

         Thereafter, Ganapolsky filed a claim with Boston Mutual for
benefits under a group accidental death and dismemberment policy
(the "policy") for the Chopart amputation of his left foot.  
Boston Mutual denied the claim for the following reasons:  first,
the policy required that the loss of a foot be a complete
severance through or above the ankle joint, and Ganapolsky's
amputation was not one through or above the ankle joint; and
second, the policy excludes loss resulting from sickness, disease
or bodily infirmity, and in the instant case, diabetes and
diabetic neuropathy were instrumental causes of the eventual
amputation.
         We review a district court's factual determinations for clear
error, see Sullivan v. Young Bros. & Co., Inc., 91 F.3d 242, 246-
47 (1st Cir. 1996), and its legal determinations de novo, seeBercovitch v. Baldwin Sch., Inc., 133 F.3d 141, 147 (1st Cir.
1998).  The insurance policy at issue provides in relevant part:
         We agree to pay benefits for loss from bodily injuries:
          
           a) caused by an accident which happens while an insured
              is covered by this policy; and

           b) which, directly and from no other causes, result in a
              covered loss.

(Emphasis added.)  The policy also excludes coverage for "loss
resulting from . . . [s]ickness, disease or bodily infirmity."  
Boston Mutual argues that this policy exclusion applies to the
instant case, and thus, that it properly denied coverage.  We
agree.  The trial judge concluded that the amputation did not
come from the foot injury within the meaning of the policy
language of 'directly and from no other causes.'"
         In this action based on diversity jurisdiction, the substantive
law of Puerto Rico governs.  See Erie R.R. Co. v. Tompkins, 304
U.S. 64 (1938).  Under Puerto Rico law, an exclusion clause in an
insurance contract is strictly construed and any ambiguity is
resolved in favor of the insured.  See Pagn Caraballo v. Silva
Delgado, 122 P.R. Dec. 105, 110-11 (1988).  However, where the
language of the exclusion unambiguously supports the insurer, the
court need not strain to find a construction favoring the
insured.  See Marn v. American Int'l Ins. Co. of P.R., 137 P.R.
Dec. __, 94 J.T.S. 132 (Oct. 28, 1994).
         Under the policy, as we previously noted, covered losses are only
those resulting directly from accidents and "from no other
causes."  The exclusion clause specifically bars coverage for
losses resulting from sickness, disease or bodily infirmity.  
According to Couch on Insurance 2d  41:74, at 112 (Rev. ed.
1982),
         If a disease or bodily condition exists and an accident
         occurs, . . . it is sufficient if the accidental means
         would have solely caused some considerable injury had
         the disease or bodily condition not existed.  But if no
         considerable injury at all would have resulted had the
         insured not been afflicted with the existing disease or
         condition, the accidental means are not the sole cause
         of the injury.

Id.  Here, we find that the worst possible injury Ganapolsky
would have sustained from the accident, if he had not been a
diabetic, was a fracture and dislocation of the foot.  However,
because of his disease, Ganapolsky's initial trauma to the foot
progressed to gangrene, requiring the Chopart amputation of his
foot.  The record reflects that gangrene in the lower extremities
is one hundred times more common in diabetics than in non-
diabetics.  Ganapolsky cannot escape the fact that his diabetes
substantially contributed to his loss.
         As the district court observed, Ganapolsky's argument that "but
for" the accident, he would not have suffered the loss of his
foot is unconvincing because, if that were the rule, "there could
never be a causal contribution to injury by preexisting
diseases."  Ganapolsky, Civ. No. 94-2229, slip op. at 3.  We
apply instead Puerto Rico's concept of adequate causation.  
"Under Puerto Rico law, the Insurance Code of Puerto Rico, 26
L.P.R.A.  101, et seq., controls the interpretation of
insurance contracts."  Nieves v. Intercontinental Life Ins. Co.,
964 F.2d 60, 63 (1st Cir. 1992).  However, since the Insurance
Code fails to provide a causation test, we turn to the Civil Code
for guidance.  See id. (observing that when Insurance Code fails
to provide an interpretative approach for particular situation,
Civil Code supplements it).  Under the Civil Code, the concept of
adequate causation is applicable to Puerto Rico tort law.  SeeSoto Cabral v. Commonwealth of Puerto Rico, 138 P.R. Dec. __, 95
J.T.S. 49 (April 21, 1995).  A condition is an adequate cause if
it ordinarily can be expected to produce the result at issue.  
See id.  Ganapolsky's accident was not an adequate cause of his
gangrene, since such an infection normally does not arise from
tripping on a step.
         For the first time on appeal, Ganapolsky contends that the
exception to the sickness, disease or bodily infirmity exclusion
applies.  That exception states that "[b]acterial infection
resulting from an accidental cut or wound . . . are not
excluded."  Ganapolsky's argument is that the general exclusion
did not apply because of the exception to it for bacterial
infections; his accident, he says, caused a bacterial infection
which caused the gangrene, which led to the amputation.  However,
"[i]f any principle is settled in this circuit, it is that,
absent the most extraordinary circumstances, legal theories not
raised squarely in the lower court cannot be broached for the
first time on appeal."  Teamsters, Local No. 59 v. Superline
Transp. Co., Inc., 953 F.2d 17, 21 (1st Cir. 1992).  Therefore,
we decline to address this argument.
         In addition, having found that Ganapolsky's loss is not covered
under the terms of the insurance contract, we need not discuss
whether the Chopart amputation of his foot constituted a loss
under the policy.  
         For the foregoing reasons, the district court's opinion
and judgment is affirmed.
         Costs to be assessed against appellant.

</body>

</html>